UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CITY OF SOUTH LAKE TAHOE RETIREES ASSOCIATION,

Plaintiff,

v.

CITY OF SOUTH LAKE TAHOE,

Defendant.

No. 2:15-cv-02502-KJM-CKD

ORDER

Plaintiff City of South Lake Tahoe Retirees Association (CSLTRA) filed this action on December 1, 2015, against defendant City of South Lake Tahoe (the City), seeking declaratory and injunctive relief, and compensatory damages with respect to changes made to the health benefits for current and retired public servants of the City. The case is now before the court on the City's motion to dismiss based on Federal Rules of Civil Procedure 12(b)(1), (6) and (7). Mot., ECF No. 8. CSLTRA opposed, Opp'n, ECF No. 11, and the City replied. Reply, ECF No. 19. On May 18, 2016, the court held a hearing on the motion; Nira Doherty and Tom Watson appeared for the City. There was no appearance on behalf of plaintiff. Subsequently, plaintiff requested another hearing due to its counsel's calendaring mistake. ECF No. 21. The court denied the request and the matter was submitted. ECF No. 22.

/////

As explained below, the court GRANTS defendant's motion to dismiss in part, with leave to amend, and DENIES in part.

I. FACTUAL ALLEGATIONS

CSLTRA is a nonprofit California corporation comprising and representing approximately 160 public employee retirees of the City on issues including "retiree hospitalization, medical, pharmaceutical, dental, vision, and retirement benefits." Compl. ¶ 4. CSLTRA's purposes include advocating for the interests of its members regarding their vested post-employment City benefits, communicating with relevant parties regarding retirees' post-employment benefits and distributing and collecting information relating to vested post-employment benefits to and from its members. *Id.*

CSLTRA and its members and directors engaged in research, study, outreach and communication with the City regarding changes to retiree health benefits adopted by the City Council through a city resolution, which went into effect on January 1, 2015 (the Resolution).

On June 29, 2015, CLSTRA's counsel served a Government Tort Claim, under California Code § 900 *et seq.*, on the City, City Council and City Manager. *Id.* ¶ 8; Ex. A, ECF No. 12. On July 29, 2015, the City, through the City Attorney, denied liability and the claim, exhausting plaintiff's remedies. Ex. B, ECF No. 12.

Under various collective bargaining agreements, known as Memorandums of Understanding (MOUs), between the labor organizations representing the retirees during their employment and the City, the retirees were contractually guaranteed the right to continue membership in the City's health care plan. Compl. ¶ 10. CLSTRA alleges that each MOU promises that "[c]overage shall continue indefinitely, however, the City health plan shall become a secondary plan to all components of Medicare at the time the retiree is eligible for the Medicare program." *Id.* ¶ 13.

There has been one medical/dental plan for all employees and retirees since 1988, *id.* ¶ 12, although pre-1993 vesting schedules varied by bargaining unit. *Id.* ¶ 10. Before 1993, under the vesting schedules specified in the different MOUs, which were adopted by corresponding city resolutions, the City subsidized a portion of the retirees' health insurance

premiums at active employee medical plan rates. *Id.* The vesting schedules reflect an escalating premium subsidy correlating to the retirees' dates of hire and years of public service with the City. *Id.*

Starting in 1993, the City and the active employee associations adopted a uniform vesting schedule for retiree healthcare benefits for all bargaining units. *Id.* ¶ 11. Under the current vesting schedule for employees hired prior to 2008, a retiree with twenty-five (25) years of City service is entitled to "maintain membership in the City medical/dental" health plan with a 100 percent City-paid premium. *Id.* A retiree with twenty (20) years of service may maintain membership in the plan with 75 percent of the premium paid by the City, plus an additional 5 percent paid for each additional year of service. *Id.* A retiree with fifteen (15) years of service is entitled to a 50 percent City-paid premium, plus an additional 5 percent per additional year of service. *Id.* A retiree with ten (10) years of service is entitled to 25 percent City-paid medical and dental coverage, with an additional 5 percent paid by the City for each additional year of service. *Id.*

The retiree health benefit program was duly bargained for as part of the collective bargaining process governed by California's Meyers-Milias-Brown Act (MMBA), California Government Code sections 3500–3511. *Id.* ¶ 15. Once the MOUs were adopted by the City Council, the City and its officials had a duty to adhere to the terms of the MOUs. *Id.*

The City stated in writing there was "no maximum duration on this coverage; you may continue these benefits for as long as our plan continues and you continue payment of your monthly premiums in a timely manner." *Id.* ¶ 17. The City also stated in writing to retirees that, "you will receive the same level of benefits [which] we provide for active employees." Retirees were told, "you may elect to continue the same medical and dental coverage as active employees . . . ." *Id.* ¶ 18.

The City did not reserve the right to terminate, eliminate, reduce, or modify these retiree benefits. *Id.* ¶ 19. The City did not reserve the right to alter the benefits to retirees or provide different health coverage to retirees than to active employees. *Id.*

/////

During the retirees' employment and retirement, they have fully performed all obligations under the respective MOUs earning the right to the vested and continuing health benefits provided under the MOUs. *Id.* ¶ 21. The retirees have met all obligations and preconditions to maturation and vesting of their rights in the retirement health benefits program. *Id.*

Starting on January 1, 2015, the active employee health plan was changed to a "tiered plan," in which the active employees choose a level of coverage and the City compensates them through cash subsidies if they choose higher tiers of coverage. *Id.* ¶ 23. Retirees, however, were assigned to the lowest level of coverage, and were not given the option of choosing a higher level of coverage with their vested City contributions. *Id.* The new plan significantly reduces the retirees' health plan coverage and raises costs to retirees. *Id.*

Also starting on January 1, 2015, retirees were removed from the City's dental plan unless they paid the premium. *Id.* ¶ 25.

Before passing the Resolution, the City negotiated these changes with labor organizations representing active employees, but not the retirees. *Id.* ¶ 29.

On June 29, 2015, CSLTRA served notice of its claim on the City, the City Council and the City Manager. *Id.* ¶ 8. On July 29, 2015, the City, through the City Attorney, denied liability and the claim. *Id.*

By its complaint, CSLTRA seeks preliminary and permanent injunctions prohibiting the City from implementing the changes to retiree medical benefits adopted in the Resolution; a mandatory injunction requiring the City to restore the vested retiree health benefit program to the status quo as of December 31, 2014; a judicial declaration under 28 U.S.C. § 2201 that retirees have a vested property interest in the health benefit program and that each Medicare-eligible retiree will maintain City-paid supplemental coverage for any plan he or she chooses for the rest of that person's life and the lives of eligible dependents; monetary damages to compensate retirees for additional medical/dental insurance costs and premiums expended because of the Resolution; attorney's fees under California Civil Code section 1021.5, California

Government Code sections 800 and 31536, 42 U.S.C. § 1983 and other relevant statutes; and costs of suit incurred.

II. RULE 12(b)(1): STANDING

A. Associational Standing

Defendant moves to dismiss plaintiff's lawsuit under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that plaintiff lacks standing. Defendant argues that plaintiff has no associational standing and cannot maintain a cause of action for its breach of contract and related claims because plaintiff was not a party to the various MOUs and thus has no standing. Mot. at 11. Plaintiff contends it has associational standing, because its individual members have standing, and individual participation is not required. Opp'n at 11.

"The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Id.* at 1122 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Id.* (citations omitted). Because standing pertains to federal courts' subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion to dismiss. *See id.*

An association has standing to bring claims on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998). As a threshold matter, "an association may have standing to assert the claims of its members even where it has suffered no injury from challenged activity." *Hunt*, 432 U.S. at 342. As to the third *Hunt* factor, the Ninth Circuit has held that "[i]ndividualized proof from the members is not needed where . . .

declaratory and injunctive relief is sought rather than monetary damages." *Associated Gen. Contractors*, 159 F.3d at 1181 (citation omitted); *Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, 944 F. Supp. 2d 799, 806 (N.D. Cal. 2013).

Defendant disputes that plaintiff satisfies the first and third prongs of the *Hunt* test for associational standing. It argues, for the first prong, the individual members plaintiff represents do not have standing to sue in their own right because they have failed to exhaust their administrative remedies. Mot. at 10. For the third prong, defendant contends the relief plaintiff seeks here requires the participation of the individual members because the individual members are parties to different MOUs as opposed to just one agreement and plaintiff has not alleged the agreements contained identical terms. *Id.*

With respect to the first prong, plaintiff notes defendant concedes CSLTRA members would have individual standing had all 160 members of CSLTRA filed individual claims under the Act. Opp'n at 12. Regarding the third prong, plaintiff argues it is not alleging there were specific variations tied to the different MOUs; instead, it is alleging that defendant infringed on all retirees' vested health plans in passing the Resolution. *Id.* at 13. Plaintiff argues the effect on the tiered healthcare plan has the same effect on all retirees and does not vary across different MOUs. *Id.* Plaintiff also says its request for monetary relief is incidental to the primary injunctive relief requested, and thus does not bar its associational standing. *Id.* at 13–14. Lastly, even if some individual participation is required, plaintiff argues it still has associational standing, because participation is limited to individual members participating as witnesses to prove the existence of the MOUs. Opp'n at 16.

1. *Hunt*'s First Prong

Regarding defendant's argument that plaintiff has no standing because it was not a contracting party to the MOUs, as *Hunt* notes, plaintiff can nevertheless assert the claims on behalf of its members *Hunt*, 432 U.S. at 343. Moreover, defendant has conflated the concept of associational standing and the requirements of the California Tort Claims Act, reading the requirement of the first *Hunt* prong to mean that the individual members of the association must each fulfill the requirements of the California Tort Claims Act. This is an incorrect reading of

*Hunt*. "Under *Hunt* . . . [i]t does not matter what specific analysis is necessary to determine that the members could bring the same suit." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9 (1988). Rather, the first *Hunt* prong "is simply to weed out plaintiffs who try to bring cases, which could not otherwise be brought, by manufacturing allegations of standing that lack any real foundation." *Id.* With respect to this prong, the issue is whether individual members are "suffering immediate or threatened injury" to their rights. *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Plaintiff alleges its individual members have a right to the continuation of their retirement healthcare benefits and have suffered injury when those benefits were reduced or eliminated. Plaintiffs have made an adequate showing to satisfy the first *Hunt* prong for associational standing.

2 *Hunt's* Third Prong

Plaintiff does not pass muster under the third prong of *Hunt*, however, because the damages it seeks "are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515.

The complaint requests "an award of monetary damages to compensate Retirees for additional medical/dental insurance costs and premiums expended . . . ." Compl. at 12. However, as alleged by plaintiff, pre-1993 MOUs "reflect an escalating premium subsidy correlating to the retirees' dates of hire and years of public service," and vary with each bargaining unit. *Id.* ¶ 10. Post-1993 MOUs, though uniform across all bargaining units, still provide for different premiums that vary with years of service. *Id.* ¶ 11. Plaintiff cites *Retiree Support Group of Contra Costa County v. Contra Costa County*, 944 F. Supp. 2d 799 (N. D. Cal. 2013), in support of its argument; however, that case is inapposite. In *Contra Costa*, the plaintiff sought only declaratory and injunctive relief rather than monetary damages. *Id.* at 806. Here, because the participation of individual members is required in order to determine each member's particular injury, defendant's motion to dismiss with respect to standing is GRANTED. The court GRANTS leave to amend consonant with Rule 11, taking into account any applicable

statute of limitations.[1] The court next analyzes other aspects of the motion in the event plaintiff is able to plead standing.

B. California Tort Claims Act

Defendant argues plaintiff fails to allege compliance with the California Tort Claims Act; specifically, the complaint fails to allege the individual members of CSLTRA filed claims in compliance with the Act. Mot. at 6. Defendant further contends that even if plaintiff had complied with the Act, plaintiff has not exhausted its administrative remedies, because when plaintiff first submitted the claim, it was brought on behalf of "approximately 80 retired City employees," while the complaint in the instant action alleges plaintiff represents "approximately 160 public employee retirees." *Id.* at 8.

Plaintiff contends it filed a claim under the Act in an excess of caution, but one was not required because the gravamen of its suit here is a request for injunctive relief and not monetary damages. Opp'n at 7. Even if a claim was required, it only had to be in "substantial compliance" with respect to the identifying information; thus, the notice was not defective because it identified 80 retirees in June 2015. *Id.* at 10.

1. Statute and Courts' Construction

Under the California Tort Claims Act (Act), Cal. Gov't Code §§ 900 *et seq.*, no suit for money or damages may be brought against a public entity until a written claim has been presented to the public entity, and the claim has been acted upon or been deemed rejected.[2] *See Alliance Financial v. City and Cty. of San Francisco*, 64 Cal. App. 4th 635, 641 (1998). "[T]he

---

[1] Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127, 1140 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

[2] The relevant status provides specifically, "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division." Cal. Gov't Code § 945.4.

purpose of the claims statutes 'is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'" *Phillips v. Desert Hosp. District*, 49 Cal. 3d 699, 705 (1989). However, "[t]he act should not be applied to snare the unwary where its purpose has been satisfied." *Elias v. San Bernardino Cty. Flood Control Dist.*, 68 Cal. App. 3d 70, 74 (1977) (internal citations omitted), *see also Phillips*, 49 Cal. 3d at 705; *Alliance Financial*, 64 Cal. App. 4th at 641. Thus, the test for whether a plaintiff has met the requirements of the Act is one of "substantial" rather than "strict" compliance. *Id.*

The California Supreme Court has held there are two tests to apply to decide whether a plaintiff has substantially complied with the claim filing requirement of the Act. First, "is there some compliance with all of the statutory requirements," and second, if there is, then "is this compliance sufficient to constitute substantial compliance." *City of San Jose*, 12 Cal. 3d at 456–57)). To be sufficient to constitute substantial compliance, the claim presented must convey to the recipient entity the "assertion of a compensable claim against [that] entity" that, if not otherwise satisfied, would result in litigation. *See Green v. State Ctr. Cmty. Coll. Dist.*, 34 Cal. App. 4th 1348, 1358 (1995). "The doctrine of substantial compliance [however]. . . cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." *Loehr v. Ventura Cty. Cmty. College Dist.*, 147 Cal. App. 3d 1071, 1083 (1983).

Under Government Code section 910, a claim must identify (1) the "name and post office address of claimant," (2) the address to which notices are to be sent, (3) the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," (4) a "general description of the indebtedness, obligation, injury, damage or loss incurred," (5) the "name or names of the public employee or employees causing the injury, damage or loss, if known" and (6) the amount claimed if it totals less than $10,000, or if the amount claimed exceeds $10,000, no dollar amount shall be included in the claim. Cal. Gov't Code § 910(a)–(f).

"When a public entity receives a document which contains the information required by section 910 and is signed by the claimant or [his] agent as required by section 910.2,

the public entity has been presented with a 'claim' under the act, and must act within 45 days or the claim is deemed to have been denied. [Cal. Gov. Code § 912.4]. Once a claim is denied or deemed to have been denied, the claimant may then proceed to file a lawsuit." *Phillips*, 49 Cal.3d at 707.

2. Analysis

The claim plaintiff presented to the City fulfilled the requirements of section 910 as set out above. Specifically, the claim provides the name of the claimant, information with respect to the members it purports to represent, and the nature of the claim. *See generally* Ex. A. The claim notes that it "seeks to compel the City . . . to carry out their . . . duty to abide by the vested retiree medical plan benefits . . . ." *Id.* at 6. Defendant does not argue plaintiff does not meet any of the six elements as required by Government Code section 910. Furthermore, the purpose of section 910 "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them," if possible. *City of San Jose*, 12 Cal. 3d at 455. Defendant did in fact conduct an investigation, Ex. B, ECF No. 12, and was aware of the circumstances surrounding the claim: "We have reviewed all of the information submitted to us related to your claim and have endeavored to be absolutely fair . . . . Your claim, having been reviewed . . . is hereby denied." *Id.*; *see Sandoval*, 2006 WL 1171828, at *12.

Defendant argued the claim filed was insufficient because the names of all the individuals the CSLTRA represents were not provided. Mot. at 7 (citing *City of San Jose*, 12 Cal. 3d at 457). The names of each of the employees were not specifically required under section 910, and the City's July 29, 2015 letter rejecting the claim never raised this issue. Ex. B, ECF No. 12. "It is settled the pleading need only establish the existence of an ascertainable class rather than name each member of the class." *City of San Jose*, 12 Cal. 3d at 457. The California Supreme Court did not require plaintiff's claim to make ascertainable its members. *Id.* at 456–57. Plaintiff's provision of its own name and contact information is at least "some compliance" with the first requirement of the statute. Cal. Gov't Code § 910(a). Moreover, plaintiff's submission satisfies the substantial compliance requirement in that it gave notice to the City that if the claim was not satisfied, litigation would result. *See Green*, 34 Cal. App. 4th at 1358. Nothing properly

before the court indicates defendant was unable to investigate plaintiff's claim, or consider pre-litigation settlement. Finally, defendant's emphasis on information regarding a "representative plaintiff" is misplaced. Mot. at 7 (citing *City of San Jose*, 12 Cal. 3d at 457). The complete principle as articulated by the California Supreme Court is as follows, "[T]o satisfy the claims statutes, the class claim must provide the name, address, and other specified information concerning the representative plaintiff . . . ." *City of San Jose*, 12 Cal. 3d at 457. The current matter before the court is not a class action.

Lastly, in terms of the individual members and whether they each needed to file a claim under the Act, as noted above, defendant conflates Article III standing and the Act's requirement. Plaintiff, the CSLTRA, is the claimant in this case. Provided it can establish standing, it has fulfilled the requirements of the Act.

The court DENIES defendant's motion to dismiss on this ground and need not reach the issue of statutory exemption under section 905 also raised by plaintiff in its opposition. *See* Opp'n at 8.

## III. RULE 12(b)(6): ADMINISTRATIVE RELIEF UNDER THE MOUs

### A. In General

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory or formulaic recitations of a claim's elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).

A party may thus move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of*

*Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

B. Discussion

Defendant argues plaintiff has not alleged compliance with any MOU grievance or arbitration provisions, and thus has failed to demonstrate exhaustion of administrative procedures as required by the relevant MOUs. Mot. at 15–16. Plaintiff argues it is not directly alleging the breach or seeking enforcement of any current MOUs. Opp'n at 17. Instead, plaintiff argues defendant had a written and implied contract to provide retirees with the same health benefits as active employees, at vested contribution levels for the retirees' lifetime. *Id.* Plaintiff also says the MOUs govern current employees only and not retirees; thus, the plaintiff and its members have never agreed to have their post-employment disputes resolved through the grievance arbitration procedures spelled out in the MOUs. *Id.* at 20.

Defendant cites to two cases, one discussing the Labor Management Relations Act, 29 U.S.C. § 185, and the other, the Postal Reorganization Act, 39 U.S.C. § 1006. In both cases the issue addressed by the court was whether a union's alleged breach of its duty of fair representation needed to be resolved prior to a suit against the employer. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983); *Stupy v. U.S. Postal Serv.*, 951 F.2d 1079, 1082 (9th Cir. 1991). Whether or not a union breached its duty of fair representation is not at issue here. Plaintiff is not arguing the union bears any responsibility. Instead, plaintiff argues the MOUs are not applicable to its individual members, because they are no longer active employees.

The court DENIES defendant's motion to dismiss on this ground.

IV. RULE 12(b)(7): NECESSARY PARTIES

A. In General

A party may bring a Rule 12(b)(7) motion to dismiss for failure to join a required party under Rule 19. Fed. R. Civ. P. 19; *Confederated Tribes of Chehalis Indian Reservation v.*

*Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). The court must first determine whether a party is "necessary" to the adjudication of the case. *Lujan*, 928 F.2d at 1498. If a party is necessary, the court must determine whether it is feasible to join that party. *Id.* Only if a necessary party cannot be joined does the court go on to inquire whether that party is a required party. *Id.* If a required party cannot be joined, the action must be dismissed. *Id.*

Whether a party is necessary to the adjudication of the case is a fact-specific inquiry. *Bakia v. Cty. of L.A.*, 687 F.2d 299, 301 (9th Cir.1982). "First, the court must consider if complete relief is possible among those parties already in the action. Second, the court must consider whether the absent party has a legally protected interest in the outcome of the action." *Confederated Tribes*, 928 F.2d at 1498 (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

B. <u>Discussion</u>

Lastly, relying on Rule 19, defendant argues plaintiffs have failed to join the various unions as necessary and indispensable parties to this lawsuit, as the unions were signatories to the MOUs challenged by plaintiff. Mot. at 13–14. Plaintiff argues that the labor organizations represent current employees and not retires, and plaintiff is not challenging any MOU affecting current employees. Opp'n at 19. Plaintiff seeks to enforce the rights of current retirees based on former MOUs and promises. *Id.* Therefore, plaintiff contends, there is no risk of inconsistent obligations if the labor organizations are not joined. *Id.*

Plaintiff alleges that before passing the Resolution, the City negotiated the challenged changes with labor organizations representing active employees, but did not negotiate with the retirees. Compl. ¶ 29. While defendant argues the unions "have an interest in representing employees subject to the MOUs," Mot. at 14, defendants have not shown why the labor unions are necessary and indispensable parties to an action concerning retirees when the unions represent only current employees, and negotiated the changes to the MOUs related to the change in benefits of current employees, representing the interests of those employees as opposed to the retirees.

The court DENIES defendant's motion to dismiss on this ground.

V. CONCLUSION

The court GRANTS defendant's motion to dismiss in part WITH LEAVE TO AMEND as to associational standing, and DENIES the balance of defendant's motion. This order resolves ECF No. 8. Plaintiff shall file any first amended complaint within twenty-one (21) days of the date of this order.

IT IS SO ORDERED.

DATED: July 25, 2016.

UNITED STATES DISTRICT JUDGE