UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SOUTH LAKE TAHOE RETIREES ASSOCIATION, | No. 2:15-cv-02502-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| CITY OF SOUTH LAKE TAHOE, | |
| Defendant. | |

A retirees association is suing a city for injunctive and declaratory relief for the allegedly unlawful changes the city made to the retirees' health benefits in 2015. The city's second motion to dismiss is before the court. Mot., ECF No. 32. The association opposes. Opp'n, ECF No. 36. On December 2, 2016, the court heard the motion. Mins., ECF No. 38. As explained below, the court DENIES the city's motion to dismiss.

/////

/////

/////

1

I.    BACKGROUND

      A.    Factual Allegations

            Plaintiff City of South Lake Tahoe Retirees Association (the "Association") is a
nonprofit California corporation comprising approximately 160 public employee retirees of the
City.  First Am. Compl., ECF No. 29, ¶ 4 ("FAC").  The Association represents and advocates for
retirees regarding "retiree hospitalization, medical, pharmaceutical, dental, vision, and retirement
benefits" and communicates information to and from its members regarding the City of South
Lake Tahoe's ("the City") vested post-employment health benefits.  *Id.*

            Plaintiff's claims derive from changes the City made to retiree health benefits
through adoption of a January 1, 2015 City Council Resolution ("the Resolution").  *Id.* ¶ 12.  The
Association alleges that by adopting the Resolution, the City violated the collective bargaining
agreements it reached with retiree labor organizations.  *Id.* ¶ 22.  Through these agreements, or
Memorandums of Understanding ("MOUs"), retirees were guaranteed the right to continue
membership in the City's health care plan.  *Id.* ¶ 10.  The MOUs establish that "[retirees] will
receive the same level of benefits [the City] provide[s] for active employees," and "[retirees] may
elect to continue the same medical and dental coverage as active employees . . . ."  *Id.* ¶ 18.  The
MOUs memorialize a uniform "vesting schedule" for the health benefits of both active employees
and retirees, and provide "no maximum duration on this coverage."  *Id.* ¶¶ 11, 17.  The City
allegedly agreed to allow the retirees to "continue these benefits for as long as [the City's] plan
continues and [the retirees] continue payment of [their] monthly premiums in a timely manner."
*Id*. ¶ 17

            The Association alleges the retirees fully performed all MOU preconditions for
their rights in the retirement health benefits program to vest, yet the Resolution affords retirees "a
much lower level of coverage than they were contractually promised."  *Id.* ¶¶ 21, 23.  The
Resolution allegedly treats the active employees more favorably than retirees, assigns the retirees
to the lowest coverage level, and removes retirees entirely from the City's dental plan unless they
pay the premium.  *Id.* ¶¶ 23, 25, 26.  The negotiations leading to the Resolution's adoption also
allegedly included only labor organizations for active employees, not retirees.  *Id.* ¶ 29.

1            B.       Initial Complaint and First Motion to Dismiss

2              The Association filed an initial complaint in December 2015, contending the

3    City's unilateral changes to retirees' health benefits violate various MOUs and violate the

4    retirees' due process rights.  Compl., ECF No. 1.

5              The Association brought seven claims: (1) Breach of contract; (2) promissory

6    estoppel; (3) federal due process violations; (4) state due process violations; (5) impairment of

7    contract under the U.S. Constitution; (6) impairment of contract under the state constitution; and

8    (7) violations of the California Pension Protection Act.  *Id*. ¶¶ 35-52.  The initial complaint

9    sought injunctive relief to restore the pre-Resolution status quo, declaratory relief, and monetary

10   damages.  *Id.* at 12.

11             The City moved to dismiss for lack of standing, failure to exhaust administrative

12   remedies, and failure to join necessary parties.  ECF No. 8 at 1.  The court granted the motion

13   only as to associational standing, giving leave to amend.  Order, July 26, 2016 ("Prior Order"),

14   ECF No. 23.

15           C.       Amended Complaint and Second Motion to Dismiss

16             On August 15, 2016, the Association filed an amended complaint repeating six of

17   the initial claims, but dropping the seventh claim for violations of the California Pension

18   Protection Act, and seeking the same injunctive and declaratory relief, but expressly renouncing

19   monetary damages.  FAC ¶¶ 9-11, 32-35.  On September 6, 2016, the City again moved to

20   dismiss for lack of associational standing and failure to state a claim.  Mot. at 1.

21   II.     ASSOCIATIONAL STANDING

22             The City first attacks the Association's standing to sue on behalf of its members.

23   *Id.* at 1-4.  The burden is on the Association to establish subject matter jurisdiction, of which

24   standing is a component.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th

25   Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  "Standing

26   addresses whether the plaintiff is the proper party to bring the matter to the court for

27   adjudication."  *Id.* (citations omitted).  An association has standing to sue on its members' behalf

28   when (1) its members would have standing to sue in their own right, (2) the interest the

3

1 association is vindicating relates to its purpose, and (3) neither the asserted claim nor the

2 requested relief require individual member participation. *Hunt v. Wash. Apple Advertising*

3 *Comm'n*, 432 U.S. 333, 342 (1977) (citation omitted).

4       In its prior dismissal order, the court found the Association here met the first two

5 *Hunt* factors, but not the third. *See* Prior Order 6-8. The court held "[the Association] does not

6 pass muster under the third factor of *Hunt* . . . because the damages it seeks are 'not common to

7 the entire membership, nor shared by all in equal degree.'" *Id.* at 7 (quoting *Warth v. Seldin*, 422

8 U.S. 490, 515 (1975)). Associational standing was not satisfied because the claimed injuries

9 appeared particularized to each member, which would have required extensive individual

10 participation to assess each member's damages based on date of hire, years of service and

11 bargaining unit. *Id.* The Association had relied on cases in which plaintiffs had sought only

12 declaratory and injunctive relief, which the court thus found distinguishable. *See*, *e.g.*, Prior

13 Order 7 (distinguishing *RSG v. Contra Costa Cnty.*, 944 F. Supp. 2d 799 (N. D. Cal. 2013)).

14 After amendment, the Association's operative complaint expressly renounces damages. Yet the

15 City still contends the case will require individualized member participation such that

16 associational standing is improper under *Hunt*'s third factor. Mot. at 5.

17       A.    *Hunt*'s Third Factor

18       *Hunt*'s third factor assesses how much individual member participation a case

19 requires. Instead of imposing a bright line constitutional test, the required inquiry "focus[es] on

20 matters of administrative convenience and efficiency" and assesses the practicality and benefit of

21 awarding relief at the associational rather than the individual level. *United Food & Commercial*

22 *Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544-45, 555 (1996); *see also Cent.*

23 *Delta Water Agency v. United States,* 306 F.3d 938, 951 n.9 (9th Cir. 2002) (noting that unlike the

24 first two *Hunt* factors, "the third factor is 'merely prudential,' and designed to promote efficiency

25 in adjudication"). Associational standing is more appropriate where "there is complete identity

26 between the interests of the consortium and those of its member[s] . . . and the necessary proof

27 could be presented 'in a group context,'" *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1,

28 10 n.4 (1988) (quoting *Hunt*, 432 U.S. at 344), or where "the challenge raises a pure question of

law that is not specific to individual members." *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 985 (C.D. Cal. 2008), *aff'd* 362 Fed. Appx. 640 (9th Cir. 2010).  Associational standing is less appropriate where the claims or relief are specific to individual members.  *See Warth*, 422 U.S. at 515.

Put another way, "[w]hen the claims require an 'ad hoc factual inquiry' for each member represented by the association, the organization does not have associational standing." *Stearns*, 678 F. Supp. 2d at 986 (quoting *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993)).  Regardless of what relief the association seeks, as-applied constitutional challenges are inherently ill suited to association-level litigation.  *See id.* at 982-86 (denying associational standing in as-applied declaratory relief action against University for allegedly unconstitutional course-approval methods); *Stearns*362 Fed. Appx. at 645 (explaining "plaintiffs' as-applied claims and the relief they seek, although equitable in nature, both require 'individualized proof' specific to each rejected course and the school that offered it."); *see also Dinkins*, 5 F.3d at 592-93 (denying associational standing to landlords' as-applied takings challenges).

Outside the limited "as-applied" context, courts consistently uphold associational standing in declaratory and injunctive relief cases.  *See Warth*, 422 U.S. at 515 (associational standing depends "in substantial measure on the nature of the relief sought"); *Assoc. Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1988) ("Individualized proof from the members is not needed where, as here, declaratory and injunctive relief is sought rather than monetary damages.") (citation omitted); *cf. SEIU, Local 721 v. Cnty. of Riverside*, 2011 WL 1599610, at *11 (C.D. Cal. 2011) (finding, because individual damage award calculations would require significant individual participation, "associational standing is precluded insofar as Plaintiff alleges monetary damages.").

The recognition of associational standing in declaratory and injunctive relief cases persists even where some individual participation is necessary.  For example, the Seventh Circuit has held an association of retired police officers seeking to prevent their city from altering the retirees' health plan had associational standing: In rejecting the city's focus on potential

1  individual participation, the court explained "[w]e can discern no indication . . . that the Supreme

2  Court intended to limit representational standing to cases in which it would not be necessary to

3  take any evidence from individual members of an association." *RCPA v. Chicago*, 7 F.3d 584,

4  602 (7th Cir. 1993).  The court went on to state, "the issue is whether the [c]ity made certain

5  binding representations with respect to its health care funding obligations.  Recovery would not

6  require that each and every [association member] establish that he was the recipient of a

7  misrepresentation by the City . . ." *Id.*at 603.

8           Other courts to address the issue agree that *Hunt*'s third factor does not preclude

9  the existence of associational standing in declaratory or injunctive relief cases in which limited

10  individual member participation is necessary.  *See Alliance for Open Soc'y Int'l, Inc. v. U.S.*

11  *Agency for Int'l Dev.*, 651 F.3d 218, 230 (2d Cir. 2011) ("'The fact that a limited amount of

12  individualized proof may be necessary does not in itself preclude associational standing.'")

13  (citation omitted); *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d

14  Cir. 2002) ("If the Pennsylvania Psychiatric Society can establish these claims

15  with limited individual participation, it would satisfy the requirements for associational

16  standing."); *cf.* <u>*Rocky Mountain Farmers Union v. Corey*</u>, No. 1:09-CV-2234-LJO-BAM, 2017

17  WL 2619130, at *7 (E.D. Cal. June 16, 2017) (denying associational standing where, although

18  plaintiffs characterized their relief as injunctive and declaratory, it required essentially the same

19  level of individual participation as a damages claim)  Of particular relevance to this case, in

20  *SCARE v. Sonoma Cnty.*, 2015 WL 1870841 (N.D. Cal. 2015), an association alleged Sonoma

21  County's new cap on healthcare benefit contributions forced retirees into much higher healthcare

22  premiums in breach of the county's longstanding agreement to pay their benefits in perpetuity.

23  *Id.* at *1.  The court found associational standing adhered, and explained "[member] participation

24  would likely be quite limited given that [the association's] claims are based almost entirely on

25  local ordinances and resolutions, each of which applies to a broad swath of retirees." *Id.* at *4.

26  Thus, "the potential limited participation by some members . . . [wa]s not sufficient to defeat

27  associational standing." *Id.*

28

6

1      Together, these cases stand for the proposition that associational standing is

2  present under *Hunt*'s third factor if the claims and relief do not require significant individual

3  member participation.

4          B.      Discussion

5          In its prior order, as noted, the court denied associational standing after applying

6  *Hunt*'s third factor, because the damages the Association sought varied significantly between

7  retirees based on their different dates of hire, years of service and bargaining units.  Prior Order 7.

8  Also as noted, the Association now seeks only injunctive and declaratory relief.  FAC ¶ 35.  The

9  Association's denunciation of monetary damages aligns this case squarely with the precedents

10 that consistently acknowledge associational standing in analogous circumstances.  The

11 Association does not raise an as-applied constitutional challenge and therefore escapes the

12 rationale for dismissal in both *Dinkins*, 5 F.3d at 592–93 and *Stearns*, 678 F. Supp. 2d at 985–86.

13 Beyond the as-applied context, the City has identified no authority for denying standing under

14 *Hunt*'s third factor in declaratory and injunctive relief cases, and at hearing the City's counsel

15 conceded he knew of none.

16         The court finds plaintiff's pleadings establish associational standing.  *Hunt*'s third

17 factor focuses on the practicality and judicial economy of adjudicating certain issues at the

18 associational, rather than individual, level.  *UFCW*, 517 U.S. at 545.  Where, as here, the

19 Association seeks only injunctive and declaratory relief and brings claims based on retirees'

20 interests as a group, rather than individual as-applied challenges, there is no prudential

21 justification weighing against a finding of standing.  The City has not explained how the potential

22 for some individual participation threatens administrative convenience or efficiency.  The

23 differing health care vesting schedules based on retirees' dates of hire and years of service has

24 little bearing on the ultimate claims and injuries at issue here.

25         To the contrary, the Association's claims involve questions that apply to all

26 members and are well-suited to association-level resolution.  The complaint requests a declaration

27 that the retirees have a vested right in continued health care despite individual benefit variations,

28 that the City violated the retirees' due process rights by excluding them from the negotiation

7

process, and that the City-retiree agreements did not permit this unilateral benefit alteration. FAC ¶¶ 22, 23, 26, 29, 42. Although individual member participation may be necessary to ascertain which contracts the City violated, if it did violate, that potential does not preclude standing under *Hunt. RCPA*, 7 F.3d at 603; *Alliance*, 651 F.3d at 230; *Psychiatric Soc.*, 280 F.3d 278, 286; *SCARE*, 2015 WL 1870841, at \*1. The Association meets all three *Hunt* factors. The court DENIES the City's motion to dismiss for lack of associational standing.

## III. FAILURE TO STATE A CLAIM

The City also moves to dismiss the Association's complaint under Rule 12(b)(6), arguing the MOUs from which the Association's claims derive do not promise what the Association alleges they promise. Mot. at 1.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6) a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need only contain a short and plain statement of the claim showing entitlement to relief, that statement must be "plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also* Fed. R. Civ. P. 8(a)(2). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 67 (quoting *Twombly*, 550 U.S. at 555). Whether Rule 12(b)(6) dismissal is warranted is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Twombly*, 550 U.S. at 679. Ultimately, the inquiry focuses on the interplay between the complaint's factual allegations and the dispositive issues of law. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

/////

8

1    In making this context-specific evaluation, the court construes the complaint in the

2    plaintiff's favor and accepts its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93-

3    94 (2007). But this rule does not apply to "a legal conclusion couched as a factual allegation,"

4    *Papasan v. Allain*, 478 U.S. 265, 286 (1986), to "allegations that contradict matters properly

5    subject to judicial notice," or to material attached to or incorporated by reference into the

6    complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).

7          B.    <u>Discussion</u>

8             The City argues judicially-noticeable facts show at least eight specific MOUs from

9    which the Associations' claims derive contain language contradicting the complaint. Mot. at 9.[1]

10   The City argues these MOU do not say "coverage shall continue indefinitely." *Id*. The City does

11   not rebut the Association's contention that three of the eight MOUs were executed after the

12   Resolution went into effect and are thus irrelevant. Opp'n at 14 (citing Rose Decl. Exs. A-I, ECF

13   No. 36-1); *see generally* Reply, ECF No. 37. As to the remaining five MOUs, several contain the

14   language the City claims is missing. *See* Decl. Alessi, Ex. 5 at 16-17 ("coverage shall continue

15   indefinitely"), Ex. 6 at 5 (same), Ex. 7 at 29-30 (same) & Ex. 8 at 4 (same).

16            Regardless, the City's dismissal argument is premature: The relevant inquiry calls

17   for contract-by-contract language comparisons and details beyond the realm of notice pleading.

18   *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient

19   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting

20   *Twombly*, 550 U.S. at 570)). The City's citation of factual inconsistencies when comparing the

21   amended complaint and eight MOUs, even if correct, would not warrant dismissal with regard to

22   the multitude of additional MOUs on which the complaint is based. As the Association notes, the

23   eight MOUs to which the City points are only a "sliver" of the eighty plus contracts that appear

24   will surface during discovery. Opp'n at 15. The complaint states a cognizable claim for relief.

25

26

27         [1] The court grants defendant's unopposed requests to take judicial notice of the eight
MOUs contained in exhibits 1 through 8, ECF No. 29, under Federal Rule of Evidence 201(b).

28

IV.    CONCLUSION

The court DENIES the City's motion to dismiss in its entirety.  The City's Answer to the Association's amended complaint is due within fourteen calendar days of this order.

IT IS SO ORDERED.

This order resolves ECF No. 32.

DATED:  June 26, 2017.

_____
UNITED STATES DISTRICT JUDGE